**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 95-5728

EDWIN HAWLEY BROOKS, JR.,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 95-5729

JOHN RUSSELL BROOKS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 95-5730

STEPHEN KENT BROOKS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 95-5790

B & D ELECTRIC SUPPLY, INC.,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                              No. 95-5803

EDWIN HAWLEY BROOKS, JR.,
Defendant-Appellee.

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                              No. 95-5804

JOHN RUSSELL BROOKS,
Defendant-Appellee.

Appeals from the United States District Court
for the Eastern District or Virginia, at Norfolk.
Richard L. Williams, Senior District Judge.
(CR-95-26)

Argued: October 30, 1996

Decided: April 16, 1997

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded by published opin-
ion. Judge Niemeyer wrote the opinion, in which Judge Murnaghan
and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** John Edward Ackerman, Houston, Texas, for Appellants.
Robert Charles Erickson, Jr., Assistant United States Attorney,

2

OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

This case requires us to interpret for the first time the $1 million jurisdictional amount requirement of 18 U.S.C. § 1031(a), criminalizing "major fraud" against the United States.

Defendants Edwin Brooks, his sons John and Stephen Brooks, and their company, B&D Electric Supply, Inc., were charged with several crimes in relation to two subcontracts to provide electrical components to prime contractors engaged in refitting ships for the United States Navy. All four defendants were convicted of trafficking in counterfeit goods, in violation of 18 U.S.C. § 2320(a), and of conspiracy to defraud the United States and to traffic in counterfeit goods, in violation of 18 U.S.C. § 371. Edwin Brooks, John Brooks, and B&D Electric were also convicted of "major fraud" against the United States in violation of 18 U.S.C. § 1031(a). And Edwin Brooks was convicted of obstruction of justice, in violation of 18 U.S.C. § 1503(a). On appeal, the defendants challenge the district court's interpretation of the major fraud statute as well as several evidentiary rulings, a jury instruction, and the sufficiency of the evidence sustaining several of their convictions. On cross-appeal, the government raises two sentencing issues. Finding none of the defendants' arguments persuasive, we affirm their convictions. Because we agree that the district court erred in one aspect of Edwin Brooks' sentence, however, we remand his cases for resentencing. We affirm the judgments against the other defendants.

I

The three Brooks defendants were operators of B&D Electric Supply, Inc., a marine electrical supply business which sold electrical

3

parts to both civilian and military customers. The majority of B&D Electric's business consisted of reselling new components produced by well-established manufacturers of electrical parts. But B&D Electric also sold some electrical components which it custom-assembled, often out of used parts.

The charges at issue in this case arose from supply contracts that B&D Electric had with two prime contractors engaged by the United States Navy to refit several ships. B&D Electric contracted with the Jonathan Corporation to supply fourteen shipboard motor controllers meeting military specifications for a total price of $51,544. B&D Electric itself assembled these controllers from components but affixed to the controllers trademarks of the Cutler-Hammer Company, an approved military supplier of controllers. B&D Electric also supplied Ingalls Shipbuilding, Inc., with six rotary switches for a total price of $1,470, representing the switches as new when B&D Electric actually had assembled or rebuilt them. The dollar amount of the prime contract between Jonathan Corporation and the Navy was greater than $9 million, and prime contract between Ingalls Shipbuilding and the Navy was greater than $5 million.

II

Edwin Brooks, John Brooks, and B&D Electric challenge their convictions for major fraud against the United States in violation of 18 U.S.C. § 1031(a), on the jurisdictional ground that their two subcontracts did not satisfy the $1 million value prescribed by the statute. While the government does not dispute that the defendants' subcontracts were for amounts less than $1 million, it argues that the statute's jurisdictional requirement is established so long as the prime contract with the United States or any part thereof is worth $1 million. The issue is one of first impression for us.

As with all questions of statutory interpretation, we begin with the language of the statute, which provides:

> Whoever knowingly executes, or attempts to execute, any scheme or artifice with the intent--
>
> (1) to defraud the United States; or

4

> (2) to obtain money or property by means of
> false or fraudulent pretenses, representations,
> or promises,
>
> in any procurement of property or services as a prime con-
> tractor with the United States or as a subcontractor or sup-
> plier on a contract in which there is a prime contract with
> the United States, <u>if the value of the contract, subcontract,</u>
> <u>or any constituent part thereof, for such property or services</u>
> <u>is $1,000,000 or more</u> shall, subject to the applicability of
> subsection (c) of this section, be fined not more than
> $1,000,000, or imprisoned not more than 10 years, or both.

18 U.S.C. § 1031(a) (emphasis added). From a straightforward read-ing of this statute, we conclude that regardless of its privity with the United States, any contractor or supplier involved with a prime con-tract with the United States who commits fraud with the requisite intent is guilty so long as the prime contract, a subcontract, a supply agreement, or any constituent part of such a contract is valued at $1 million or more.

This reading recognizes that the seriousness of this species of fraud is measured not merely by the out-of-pocket financial loss incurred on a particular subcontract, but also by the potential consequences of the fraud for persons and property. In military contracts in particular, fraud in the provision of small and inexpensive parts can have major effects, destroying or making inoperable multi-million dollar systems or equipment, injuring service people, and compromising military readiness. By extending the statute's coverage even to minor contrac-tors and suppliers whose fraudulent actions could undermine major operations, Congress enabled prosecutors to combat effectively the severe procurement fraud problem that Congress identified.

We understand that our reading is contrary to that espoused in dic-tum by the Second Circuit in <u>United States v. Nadi</u>, 996 F.2d 548 (2d Cir. 1993), the only other court to have interpreted the jurisdictional amount requirement of the major fraud statute. That court stated that for purposes of ascertaining the jurisdictional amount requirement of 18 U.S.C. § 1031(a), "the value of the contract is determined by look-ing to the <u>specific</u> contract upon which the fraud is based." <u>Id.</u> at 551

5

(emphasis added). It explained that "[t]his reading avoids the potential anomaly of small subcontractors whose subcontracts are valued at far less than $1,000,000 being prosecuted under the Act simply because the prime contract is for $1,000,000 or more." Id. But the jurisdictional amount requirement of the major fraud statute, like any bright line rule, dictates that some cases will fall outside of the scope of the law. We believe that our reading of the statute is no more anomalous than one which allows small subcontractors to escape prosecution under the provision, regardless of the cost of the overall project which their fraud affects, simply by ensuring that their own subcontract stays below the $1 million jurisdictional amount. The Nadi court's interpretation could significantly undermine the purpose of the statute because pervasive fraud on a multi-million dollar defense project would be unreachable under the statute, despite Congress' intent, if it were perpetrated in multiple separate subcontracts, each involving less than the jurisdictional amount.

The legislative history also supports our interpretation that the statute reaches fraud where any part of the prime contract or subcontract is valued at $1 million or more. In discussing the steady increase in procurement fraud losses, the Senate described its broad range of concern:

> Procurement fraud is the most costly kind of fraud, accounting for about 18 percent of total losses. The Department of Defense reports losses of $99.1 million due to procurement fraud for fiscal years 1986 and 1987.
>
> Prosecutions of individual companies reveal other disturbing facts:
>
> Two corporate officials of Spring Works, Inc., were convicted of deliberately providing defective springs for installation in critical assemblies of the CH-47 helicopters, the Cruise Missile and the F-18 and B-1 aircraft.
>
> Two corporate officials of MKB Manufacturing were sentenced for their role in the deliberate provision of defective gas pistons for installation in

6

> the M60 machine gun. Installation of the defective
> part would cause the machine gun to jam.
>
>   Thus, the evidence shows that besides causing financial
> losses, procurement fraud could cause the loss of life of
> American soldiers and could threaten national security.
>
>   These facts compel a legislative response.

S. Rep. No. 100-503, at 2 (1988), <u>reprinted in</u> 1988 U.S.C.C.A.N.
5969, 5969-70 (citations omitted). The parts at issue in the Spring
Works case were 21-cent springs, and the total value of the subcon-
tract was $160.25. Yet, it was fraud like that perpetrated by Spring
Works to which Congress was responding in 1988 with enactment of
the major fraud statute. Undoubtedly, Congress was concerned with
more than the most direct and narrow financial effects of fraud com-
mitted against the United States.

The legislative history also illuminates the meaning of the phrase
in § 1031(a) at issue here, "value of the contract." In the section-by-
section analysis, the Senate report states:

>   Section 1031(a) applies to procurement fraud"if the value
> of the contract, subcontract, or any constituent part thereof
> . . . is $1,000,000 or more." The phrase "value of the con-
> tract" refers to the value of the contract award, or the
> amount the government has agreed to pay to the provider of
> services whether or not this sum represents a profit to the
> contracting company. Furthermore, a subcontractor awarded
> a subcontract valued at $1,000,000 or more is covered by
> this section, regardless of the amount of the contract award
> to the contractor or other subcontractors.

S. Rep. No. 100-503, at 12 (1988), <u>reprinted in</u> 1988 U.S.C.C.A.N.
5969, 5975-76. Thus, for example, if a prime contractor had entered
into three separate contracts, agreeing under each to supply the United
States with $750,000 worth of equipment, but entered into a single
supply contract with a subcontractor for $1 million worth of parts, the
subcontractor would be covered by the Act. This Senate report expla-

7

nation supports the interpretation that the statute applies to the entire procurement effort where any contractual component has a value of $1 million or more, so that a court should not confine its inquiry with regard to the jurisdictional amount of § 1031(a) to the value of the subcontract under which the fraud was perpetrated. As § 1031(a) provides, the statute applies to a government contractor, subcontractor, or supplier if "any constituent part" of the contract is worth more than $1 million.

Accordingly, the district court in this case did not err in taking into account the contract values of the Navy's prime contracts with Jonathan Corporation and Ingalls Shipbuilding.

III

The defendants also challenge the sufficiency of the evidence on the major fraud counts, arguing that the final value of the prime contracts was not established. Their challenge, however, has no merit. At trial, the government produced the original prime contracts, as well as testimony, all of which demonstrate prime contract values well in excess of $1 million. The evidence shows that the prime contract of Jonathan Corporation, while not final because of modifications occurring during performance, well exceeded $9 million and, with options, could have reached $35 million. The prime contract of Ingalls Shipbuilding exceeded $5.5 million. While the government did not produce evidence regarding the final cost of these projects upon their completion, or even whether they were ultimately completed, it was not required to do so in order to establish the $1 million jurisdictional amount.

IV

Defendants next challenge the district court's jury instruction with respect to Count I of the indictment which charged them with conspiracy to defraud the United States and to violate 18 U.S.C. § 2320(a) (trafficking in counterfeit goods or services). They contend that the court's jury instruction constructively amended the indictment -- which, they interpret, rested solely on the substantive offense of trafficking in counterfeit goods -- to charge conspiracy to commit major fraud.

8

A comparison of the indictment and the district court's instruction, however, discloses that the defendants' contention is without merit. Count I of the indictment charged the defendants with conspiring "to defraud the United States, <u>and</u> to commit an offense against the United States," specifically, trafficking in counterfeit goods, in violation of 18 U.S.C. § 2320(a). (Emphasis added); <u>see</u> 18 U.S.C. § 371 (criminalizing conspiracy to commit offense against United States <u>or</u> to defraud United States). The district court instructed the jury that the government had the burden of proving that "two or more persons conspired or agreed to commit the crime of defrauding the United States." Although defendants contend that this instruction impermissibly altered the charged crimes to include conspiracy to defraud, the indictment on its face charges conspiracy to defraud <u>and</u> to commit an offense against the United States. Accordingly, the court acted properly in instructing the jury on conspiracy to defraud.

V

Defendants also challenge two evidentiary rulings by the district court. We review evidentiary rulings for abuse of discretion, and such rulings are subject to harmless error review under Federal Rule of Criminal Procedure 52. <u>See United States v. Heater</u>, 63 F.3d 311, 325 (4th Cir. 1995). "[I]n order to find a district court's error harmless, we need only be able to say `with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" <u>Id.</u> (citations omitted).

A

Defendants contend that the district court erred in admitting into evidence at one time 375 of the government's pretrial exhibits, consisting of numerous pages from a "tag order book" of other manufacturers' trademarks as well as some of the motor controllers allegedly sold by the defendants under the contract in question. In the interests of judicial efficiency, the district court instructed the government to move the exhibits into evidence but made clear that the items were not automatically available for publication to the jury. The defendants objected on the grounds that the various items of evidence were not properly authenticated or were hearsay lacking the foundation neces-

9

sary to establish their admissibility under any exception. The court invited the defense counsel at that time, as well as at the close of the evidence, to make specific objections to any particular items of evidence. But even when specifically requested by the court to present particularized objections, defense counsel merely reiterated their general objections.

While the district court may have employed an unorthodox and perhaps somewhat impatient method of processing the evidence, absent a more particularized objection to specific evidence and a demonstration of prejudice, we can find no error.

The defendants' sole claim of prejudice comes not from the method of admitting evidence but from the government's effort to prove the inferior quality of the controllers despite its failure to establish that the controllers in evidence were in substantially the same condition as they had been when they were sold to the Navy. The defendants' cross examination, however, effectively revealed the lack of information about the maintenance of the controllers between their sale and the date of trial. More importantly, the Navy's fraud claim did not depend upon the inferiority of the B&D Electric components. The United States Navy had contracted for approved military parts and had a contractual right to receive them regardless of whether or not falsely labeled substitutes were equivalent in quality. See United States v. Castner, 50 F.3d 1267, 1275-76 (4th Cir. 1995). Because the defendants did not receive any sentence enhancements based on a finding that their parts were inferior and dangerous, even if the admission of these controllers without further foundation were error, we can find no harm.

B

The defendants also challenge the district court's evidentiary ruling that excluded from evidence the results of shock and vibration testing which defendants had performed on motor controllers that they had assembled for trial. While defendants were attempting to demonstrate the quality of their controllers, again we note that the quality of the motor controllers was not material to their culpability on the charges and did not form the basis for any sentencing enhancement. Accord-

10

ingly, we find that no harm resulted from the court's exclusion of these test results.

## VI

Finally, defendants challenge the sufficiency of evidence to support several of the convictions. In a criminal case,"[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it," Glasser v. United States, 315 U.S. 60, 80 (1942), or likewise,"we shall reverse a verdict if the record demonstrates a lack of evidence from which a jury could find guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

### A

All four defendants contend that the evidence was insufficient to sustain their convictions under Count V, charging them with violating 18 U.S.C. § 2320(a) which penalizes any person who "intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services." The statute defines "counterfeit mark" as"a spurious mark -- (i) that is used in connection with trafficking in goods or services; (ii) that is identical with, or substantially indistinguishable from, a [registered] mark . . . in use, whether or not the defendant knew such mark was so registered; and (iii) the use of which is likely to cause confusion, to cause mistake, or to deceive." 18 U.S.C. § 2320(d)(1)(A).

Defendants contend that the evidence does not support their conviction on this count because they demonstrated that the motor controllers to which the Cutler-Hammer trademarks were attached on the outside also contained an interior label stating that they were custom assembled by B&D Electric. They also introduced evidence that the defense contractors with whom B&D Electric contracted were aware that B&D Electric custom assembled the components that it sold to them. Thus, as the defendants summarize their argument, there was "no evidence that the Appellants used counterfeit marks for the purpose of deception or to cause confusion or mistake." The defendants' contention, however, misconceives the requirements of the statute. The government did not have to prove either actual confusion or an

11

intent to mislead. Rather, the government was required to prove that the defendant knowingly used a counterfeit mark that was <u>likely</u> to cause confusion or to mislead. <u>See</u> 18 U.S.C.§ 2320(d)(1)(A)(iii). In this case, Edwin Brooks himself testified that B&D Electric used trademarks identical to those of the Cutler-Hammer Company in order to identify B&D Electric's parts. While Brooks explained that he used Cutler-Hammer marks so that the Navy could reorder authentic parts and use authentic repair manuals, this explanation does not justify the defendants' false use of the marks, nor does it negate the likelihood of confusion caused by the defendants' false labeling.

B

Edwin Brooks challenges the sufficiency of the evidence to support his conviction for obstruction of justice under 18 U.S.C. § 1503(a), arguing that the evidence fails to support a finding of a specific intent to obstruct justice.

The obstruction of justice statute provides:

> Whoever corruptly . . . endeavors to . . . impede any grand or petit juror, or officer in or of any court of the United States . . . in the discharge of his duty . . . or corruptly . . . influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished . . . .

18 U.S.C. § 1503(a). And we have summarized its requirements as follows: "To be guilty of obstructing justice under § 1503, a defendant must have knowledge or notice of a pending judicial proceeding, and must have acted with the intent to influence, obstruct, or impede that proceeding in its due administration of justice." <u>United States v. Littleton</u>, 76 F.3d 614, 619 (4th Cir. 1996). Because evidence of intent will almost always be circumstantial, we have held that a defendant may be found culpable where the reasonable and foreseeable consequences of his acts are the obstruction of justice, concluding that "when a defendant intentionally seeks to corrupt, the foreseeable consequence of which is to obstruct justice, he has violated § 1503." <u>United States v. Neiswender</u>, 590 F.2d 1269, 1274 (4th Cir. 1979). The Supreme Court has held similarly that in order to convict under

12

§ 1503, the government need not demonstrate that justice was in fact obstructed but must prove only that "the endeavor[has] the natural and probable effect of interfering with the due administration of justice." United States v. Aguilar, 115 S. Ct. 2357, 2362 (1995) (internal quotes omitted).

The evidence in this case showed that Edwin Brooks received a grand jury subpoena on January 19, 1993, that demanded business records or documents concerning the sale and/or purchase of electrical components. While he produced many documents in response to the subpoena, he later testified that he did not include general corporate minutes because he did not understand the subpoena to require their production. In October 1993, Brooks received a letter stating that the grand jury had demanded to see the corporate minute books as well, and he produced these books in early November 1993. The government discovered, however, that the minutes had been altered or amended. When asked for the original versions, Brooks stated that he believed they had been destroyed. Over a year later, Brooks produced a portion of the original minutes, stating that he had recently found them under a rug in his home.

At trial, the government produced testimony indicating that the minutes had been altered after the date of the original subpoena and suggesting that some of the original minutes remained missing. Edwin Brooks explained the alterations in the minutes as having been undertaken in order to make corrections for purposes of an unrelated civil suit. The evidence presented, while not uncontradicted, was nevertheless sufficient to sustain a conviction for obstruction of justice. A reasonable jury was entitled to believe the government's circumstantial evidence and disbelieve Edwin Brooks.

VII

The government cross-appeals, raising two sentencing issues. First, the government contends that the district court erred in failing to enhance Edwin Brooks' offense level for obstruction of justice as provided by U.S.S.G. § 3C1.1. The government maintains that Brooks should have received a two-level enhancement because of his conviction for obstruction of justice. We agree.

13

In rejecting the enhancement at sentencing, the district court relied solely on its finding that Edwin Brooks had not perjured himself at trial, failing to recognize that U.S.S.G. § 3C1.1 instructs that a two-level increase should be imposed for a broader range of obstruction or attempted obstruction of justice. Application note 3(i) to U.S.S.G. § 3C1.1 specifically lists as conduct meriting this enhancement that conduct which is prohibited by 18 U.S.C. §§ 1501-1516. The note goes on to state that the adjustment applies to"any other obstructive conduct in respect to the official investigation, prosecution, or sentencing of the instant offense where there is a separate count of conviction for such conduct." And finally, the application makes clear its applicability to the circumstances in this case:

> Where the defendant is convicted both of the obstruction offense and the underlying offense, the count for the obstruction offense will be grouped with the count for the underlying offense under subsection (c) of §3D1.2 (Groups of Closely Related Counts). The offense level for that group of closely related counts will be the offense level for the underlying offense <u>increased by the 2-level adjustment specified by this section</u>, or the offense level for the obstruction offense, <u>whichever is greater</u>.

U.S.S.G. § 3C1.1, comment. (n.6) (emphasis added). Accordingly, Edwin Brooks will have to be resentenced.

Second, the government contends that the district court erred in calculating the government's loss in determining the offense level for the fraud and counterfeiting claims. The amount of the government's loss is a factual finding which we review for clear error.

Although the government intimated on appeal that its ability to prove its loss had been handicapped by the district court's refusal to permit a witness to testify at sentencing, our review of the transcript indicates that the government conceded that the witness would add nothing to the written information contained in the government's loss calculation report. Accordingly, it cannot now complain that the district court acted improperly at the sentencing hearing when the court concluded that the witness' testimony would only be repetitious.

14

The government's loss calculation report, which the district court considered, used the number of counterfeit trademark tags that remained unaccounted for by B&D Electric as the basis of an elaborate reconstruction of the numbers of electrical components the government believed the Navy to have purchased from B&D Electric. B&D Electric countered, however, that the government's calculation resulted in nothing more than a gross sales number which did not take into account sales to customers other than the United States. Accepting this explanation, the district court concluded that the government's method of proving loss in this case was simply too speculative. The court confined its finding of loss to those items for which invoices and other direct evidence of government sales were provided. We cannot say that the district court's finding was clear error.

VIII

In conclusion, we affirm the defendants' convictions and affirm the judgments against defendants John Brooks, Stephen Brooks, and B&D Electric. We remand Edwin Brooks' cases for resentencing in accordance with this opinion.

Case Nos. 95-5729, 95-5730, 95-5790, and 95-5804-- <u>AFFIRMED</u>
Case Nos. 95-5728 and 95-5803 -- <u>AFFIRMED IN PART AND REMANDED FOR RESENTENCING</u>

15