UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 97-4039

MICHAEL J. SINDRAM,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Herbert N. Maletz, Senior Judge, sitting by designation.
(CR-96-111-HNM)

Submitted: December 9, 1997

Decided: January 26, 1998

Before ERVIN, LUTTIG, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

COUNSEL

W. Michel Pierson, Baltimore, Maryland, for Appellant. Lynne A.
Battaglia, United States Attorney for the District of Maryland, Jan
Paul Miller, Assistant United States Attorney, Greenbelt, Maryland;
Hollis Raphael Weisman, Assistant United States Attorney, Hyatts-
ville, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Michael J. Sindram appeals from his convictions and sentences on four counts of mail fraud in violation of 18 U.S.C.§ 1341 (1994). Sindram asserts that the district court erred in declining to suppress evidence seized during a search of his apartment, in admitting evidence of his threatening conduct, in permitting cross-examination regarding a prior conviction, and in increasing his offense level based on alleged inaccurate findings of loss and for obstruction of justice. He also asserts that the evidence was insufficient to support his convictions. Finding no error, we affirm.

Sindram was indicted for conducting a scheme whereby he ordered goods, mostly books, through the mail under false names without remitting payment to the vendors. Viewed in the light most favorable to the Government, see Glasser v. United States , 315 U.S. 60, 80 (1942), the facts are as follows. Using many false names, Sindram ordered materials from book publishers, distributors and mail order houses. He received the mail-order shipments at two post office boxes at the Colesville Branch Post Office in Colesville, Maryland. Sometimes, he received over 100 parcels a week, well above the post office average. Sindram was often observed at the post office loading the parcels into his automobile.

Representatives from five different mail order publishers and sellers testified they mailed various products to Sindram's post office box. Medical Economics, a publisher, sent over fifty shipments containing Physicians' Desk References and other medical books in various names to Sindram's post office box. Unpaid invoices on these shipments totaled $16,300. In total, there was evidence of over $50,000 worth of unpaid invoices from the five mail order houses for shipments made to Sindram's post office box. Sindram was able to sell some of the books to retail bookstores. He also attempted to "re-

2

turn" some books to bookstores under the pretense that the books were purchased there.

After an indictment was filed in March 1996 charging Sindram with mail fraud, search warrants were executed on Sindram's home and his car. Postal inspectors seized books, bills and collection notices from various mail order houses and collection agencies. They also seized $15,500 cash in $100 bills.

Sindram testified in his own defense that he ordered books because of their weight for the purpose of "punishing" the Postal Service for closing his first post office box. He conceded that he ordered the books under false names; however, he asserted that he intended to pay the invoices.

At sentencing, the court increased Sindram's base offense level from level 6 to level 12 based on its conclusion regarding the amount of loss suffered by the mail order houses. The Government showed that the total loss due to Sindram's illegal conduct was over $82,000. This amount was derived from information provided by thirteen mail order companies that mailed goods to Sindram's post office box. The court also increased the offense level two levels for obstruction of justice after finding that Sindram committed perjury. He was sentenced to four concurrent terms of 41 months' imprisonment.

Sindram contends that there was insufficient probable cause to support the search warrant for his home because there was insufficient evidence to establish a nexus between his alleged criminal activity and his residence. He also asserts that the seizure of the money was beyond the scope of the search warrant.

The legal question of whether a search warrant and its supporting affidavit are legally sufficient is reviewed de novo and substantial deference is accorded to a neutral and detached magistrate judge's judgment. See United States v. Oloyede, 982 F.2d 133, 138 (4th Cir. 1992). This Court must simply insure that the magistrate judge had a substantial basis for concluding that probable cause existed. See Illinois v. Gates, 462 U.S. 213, 238 (1983). The magistrate's task is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair

3

probability that contraband or evidence of a crime will be found in a particular place." Id.

The search warrant's supporting affidavit clearly showed that it was likely that Sindram was taking the parcels from the post office to his home. Moreover, information does not necessarily become stale after a certain period of time. Factors to be considered are the nature of the alleged unlawful activity, the length of time of the activity, and the nature of the property to be seized. See United States v. McCall, 740 F.2d 1331, 1336 (4th Cir. 1984). Here, there was evidence that Sindram's scheme was continuous. Furthermore, there was no indication that books needed to be disposed of quickly.

The seizure of the money was not beyond the scope of the warrant. The warrant authorized the seizure of, among other items, "receipts for sales transactions, bills, canceled checks, check books, [and] bank deposit records." The requirement that a search warrant describe its objects with particularity is a standard of practical accuracy rather than a hypertechnical one. See United States v. Lowe, 50 F.3d 604, 607 (8th Cir. 1995); see also United States v. Jacob, 657 F.2d 49, 52 (4th Cir. 1981) (suppression of evidence due to hypertechnical errors should be avoided). Here, as shown by the warrant, postal inspectors were looking for the fruits of Sindram's fraudulent activities, which included the goods sent to him and any evidence of monetary gain through the subsequent sale of the books. Thus, the district court properly found that the cash was subsumed within the items listed to be seized, and we affirm the court's denial of Sindram's motion to suppress evidence.

There was considerable testimony provided by postal employees and booksellers, admitted without objection, that Sindram was impatient, impolite, uncivil, intimidating and threatening. Sindram contends that admitting this evidence was in violation of Fed. R. Evid. 404(b). Because Sindram did not object, we review for plain error. See Fed. R. Crim. P. 52(b). To reverse for plain error, this Court must "(1) identify an error; (2) which is plain; (3) which affects substantial rights; and (4) which seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Moore, 11 F.3d 475, 481 (4th Cir. 1993). The challenged evidence concerned Sindram's conduct when he was perpetuating his scheme, i.e. when

4

he was picking up his mail or attempting to sell the books. Even if admitting the evidence were error, Sindram failed to show that it affected the outcome of the trial. See Moore, 11 F.3d at 481. There was considerable evidence of Sindram's guilt, including business records and order forms under a variety of names directing that parcels be sent to Sindram's post office box. Furthermore, Sindram conceded that he ordered the books under assumed names and had not paid for them. We therefore find no plain error.

Over defense counsel's objection, the Government was permitted to ask Sindram about a 1995 conviction for felony theft. The court found that the probative value outweighed the prejudicial effect. Evidentiary rulings are reviewed for an abuse of discretion, and such rulings are subject to a harmless error analysis. See United States v. Brooks, 111 F.3d 365, 371 (4th Cir. 1997). "In order to find a district court's error harmless, we need only be able to say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Id. (citation omitted). Any error that may have occurred by admitting evidence of Sindram's prior conviction was harmless. In light of the Government's substantial evidence, the jury's finding of guilt was not swayed by the alleged improper evidence.

Sindram's contention that the court erred in increasing his offense level based upon the loss suffered by various mail order houses is without merit. Much of the evidence was actual invoices billed to Sindram or an assumed name at his post office box. Furthermore, the court did not err by increasing Sindram's offense level by 2 for obstruction of justice based upon the court's finding that Sindram committed perjury. The court's finding encompassed all of the factual predicates for a finding of perjury. See United States v. Dunnigan, 507 U.S. 87, 95 (1993).

We also find sufficient evidence to support Sindram's conviction. A conviction must be affirmed if there is substantial evidence, viewed in light most favorable to the Government, to support a finding of guilt. See Glasser, 315 U.S. at 80. Circumstantial and direct evidence are both considered, and the government is given the benefit of all reasonable inferences from the facts proven to the facts sought to be

5

established. See United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

To prove mail fraud, the Government had to show beyond a reasonable doubt that Sindram: (1) engaged in a scheme to defraud; (2) by using the mails; (3) in furtherance of the scheme. See United States v. Locklear, 829 F.2d 1314, 1318 (4th Cir. 1987). A scheme to defraud means "any scheme to deprive another of money or property by means of false or fraudulent pretenses, misrepresentation or promises." Carpenter v. United States, 484 U.S. 19, 27 (1987). Clearly, the evidence, when viewed in the light most favorable to the Government, established that Sindram intended to deprive the mail order houses of property.

Finally, Sindram's contention that Congress did not intend § 1341 to encompass conduct which involved the use of a false name because it enacted 18 U.S.C. § 1342 (1994) is without merit. The scope of each statute is different, and the plain language of § 1341 covers Sindram's conduct.

We therefore affirm Sindram's convictions and sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument will not aid the decisional process.

AFFIRMED

6