**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 97-4807

JENNIFER K. ATKINS,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CR-97-196)

Submitted: March 3, 1998

Decided: April 3, 1998

Before MURNAGHAN, LUTTIG, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Richard Barton Lankford, SHARP & LANKFORD, Washington,
D.C., for Appellant. Helen F. Fahey, United States Attorney, Carl G.
Eurenius, Special Assistant United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Appellant Jennifer K. Atkins appeals her convictions and sentences on one count of bank fraud (18 U.S.C. § 1344 (1994)), and one count of embezzlement of bank funds (18 U.S.C. § 656 (1994)). Atkins, a former bank teller, was found guilty of stealing $16,700 from the bank where she worked and executing a scheme to conceal her theft. On appeal, Atkins challenges certain evidentiary rulings. Finding no error, we affirm.

On March 3, 1997, Atkins, while on-duty, recorded via her computer terminal a $16,700 transfer to another teller. There was no record of the transferee teller acknowledging receipt of the money as is normally required. In fact, the transferee teller could not acknowledge receipt because her account had been closed to any transactions as of February 27, 1997. At the end of the business day on March 3, the head teller ascertained that the $16,700 was not received by the transferee teller. Atkins's "settlement envelope," which contained the teller's paper receipts of the workday's transactions, did not have a record of the purported transfer. The records reflecting the transfer were found crumpled up in a trash can near Atkins's workstation. In order for Atkins to have settled her account on March 3, she would have had to press an override button on her computer which would clear a warning signal that the $16,700 transfer had not been accepted by the transferee teller. The money was never found.

Atkins's cash drawer was locked in the main vault under the control of the head teller. On March 13, 1997, the cash drawer was removed from the main vault and broken down. In her drawer was a piece of paper with handwritten bank codes which allow managers to reset, via computer, teller totals. On the same piece of paper was the handwritten social security number of the bank's customer security manager, of which the first two digits were in brackets. The remaining digits make up that customer service manager's personal override code for the teller line. There was no reason for Atkins to have possession of these codes. The bank manager identified the handwriting on the paper as that of Atkins. Prior to the March 13 audit, Atkins, who had been on administrative leave since March 3, had requested

2

a fellow teller to remove some papers with numbers on them from her drawer.

The defense attempted to show that another teller, Ericka Herrera, was responsible for the theft. She was working on March 3 at a workstation close to Atkins. She had also filed for bankruptcy on March 4, 1997, listing liabilities of $17,000. However, the defense was denied the opportunity to show evidence of a prior transfer of $2000 occurring in December 1995, in which Herrera transferred $2000 to another teller who acknowledged receipt of the money via her computer. The money was never located, and no action was taken against either teller. The bank's corporate security office issued a report stating records of the transfer were either lost or destroyed and that either teller could have benefitted from the transaction. In ruling on a motion in limine in favor of the Government, the court found the incident to be too far removed in time from the charged conduct. Herrera did not testify.

Atkins contends that evidence of Herrera's involvement with the $2000 transfer was admissible under either Fed. R. Evid. 404(b) or 405(a) and (b). Evidentiary rulings are reviewed for an abuse of discretion, and such rulings are subject to a harmless error analysis. See United States v. Brooks, 111 F.3d 365, 371 (4th Cir. 1997). "In order to find a district court's error harmless, we need only be able to say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Id. (citation omitted).

Rule 404(b) provides that evidence of prior "crimes, wrongs, or acts," when relevant, is admissible unless offered to prove "the character of a person in order to show action in conformity therewith." The rule contains a non-exhaustive list of those purposes for which this evidence may be admitted: "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).

Atkins intended to use evidence of the $2000 transfer to show Herrera's intent and common scheme. Even assuming, without deciding, that the incident was not so remote in time to be inadmissible, we find the court did not abuse its discretion. In order for the evidence to be

3

relevant for the purposes suggested by Atkins, the jury must have reason to find that Herrera stole the $2000. See Huddleston v. United States, 485 U.S. 681, 689 (1988). Unlike the $16,700 transfer, the $2000 transfer was acknowledged as being received by the transferee teller. Thus, the transferee teller came into possession of the funds. There was no evidence that the $2000 remained with Herrera. Accordingly, we find there was no error in not admitting this evidence under Fed. R. Evid. 404(b).

Likewise, we find that Atkins's claim that the evidence was also admissible under Fed. R. Evid. 405 must also fail. Rule 405(a) permits cross-examination into specific instances of conduct to challenge direct opinion or reputation testimony as to a particular character trait. Here, there was testimony from another teller that Herrera would "never" steal. Atkins contends this opened the door to permit her to question the witness about the $2000 transfer. Atkins, however, failed to show that this transaction was relevant to Herrera's character with regard to stealing. See United States v. Monteleone, 77 F.3d 1086, 1090 (8th Cir. 1996).

Rule 405(b) permits evidence of specific instances of conduct "[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense." This rule is applied in those instances in which "character is in issue in a strict sense, which occurs where a material fact that under the substantive law determines rights and liabilities of the parties, such as plaintiff's reputation for honesty in a defamation action." United States v. Piche, 981 F.2d 706, 713 (4th Cir. 1992) (internal quotations omitted). Evidence of Herrera's involvement in the $2000 transfer was not relevant to an essential element of Atkins's defense.

Moreover, we find that even if the court erred in not allowing the evidence of the $2000 transfer, the error was harmless. Given the evidence presented at trial, there is no indication that the jury was substantially swayed by the court's decision.

Atkins also challenges the admission of the piece of paper containing a series of codes and numbers found in her cash drawer. First, she contends the writing was not properly authenticated. Second, she con-

4

tends the chain of custody of the cash drawer was not established. Again, we find the court did not abuse its discretion.

Under Fed. R. Evid. 901(b)(1), a writing may be authenticated by a non-expert based upon familiarity not acquired for the purposes of litigation. At trial, the bank manager testified that she believed the codes were in Atkins's handwriting, based on comparisons with other pieces of writing. Atkins contends that the bank manager could not have become familiar with her handwriting because she (the bank manager) had only been working there for one month and Atkins was a part-time employee. Clearly, the bank manager's opinion as to the maker of the writing was "rationally based on[her] perception" and helpful to the jury. See Fed. R. Evid. 701. Thus, we find the court did not abuse its discretion in permitting the bank manager's testimony.*

Finally, Atkins contends that the writing should not have been admitted because it is possible that the chain of custody was disrupted between March 3 and March 13, when the writing was found in Atkins's cash drawer. This contention is meritless. There was no evidence that anyone had access to the cash drawer in that period with the exception of the head teller. In addition, there was additional evidence that Atkins wanted papers with numbers removed from her drawer.

Based on the foregoing, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED
_____
*Atkins's contention that the twenty-two numerals, two letters and a dash written on the piece of paper is not typical handwriting for the purpose of comparison is without support.

5