**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 98-4378

ADAN GOMEZ HERNANDEZ,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 98-4388

JUAN LINARE LOPEZ,
Defendant-Appellant.

Appeals from the United States District Court
for the Middle District of North Carolina, at Durham.
James A. Beaty, Jr., District Judge.
(CR-97-271)

Submitted: November 17, 1998

Decided: December 7, 1998

Before MURNAGHAN, HAMILTON, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

George M. Cleland, Winston-Salem, North Carolina; James Darren
Byers, LAW OFFICE OF J. DARREN BYERS, P.A., Winston-

Salem, North Carolina, for Appellants. Walter C. Holton, Jr., United States Attorney, Sandra J. Hairston, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Adan Gomez Hernandez and Juan Linare Lopez appeal from the district court judgments entered pursuant to a jury verdict finding them both guilty of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (1994), and Lopez guilty of carrying a firearm during a drug trafficking offense in violation of 18 U.S.C.§ 924(c)(1) (1994). We affirm.

In September 1997 Detective Charles Gray authorized Tarrington Thacker to make a controlled cocaine purchase from an individual named Alex. On September 17, 1997, Thacker paged Alex to arrange the deal. Approximately forty-five minutes later Alex and another Hispanic male arrived at Thacker's place of business. The two men then went into Thacker's van for Thacker to show that he had the money for the cocaine purchase.[1] One of the Hispanic men used Thacker's cellular telephone and then the two men left. According to Gray, Thacker then called him and provided him with the number that had just been dialed on his telephone.

Later that day a Pontiac Grand Am pulled up at Thacker's place of

_____

[1] The van had previously been wired so that Gray and other officers, who were parked approximately 100-150 yards away, could listen to the transaction. Gray testified that the agents knew that one of the Hispanic men was Alex, and that he later learned from Thacker and an audio tape of the transaction that the other man was Alberto Mendoza.

2

business and two Hispanic males walked over to Thacker who was seated in his van. Both vehicles then drove to another location to complete the drug deal. Upon arriving at that location police immediately arrested all parties involved. At the time of the arrest Alberto Mendoza was seated in the passenger seat of the van. Under that seat police found approximately one kilogram of cocaine. Hernandez was driving the Grand Am with Lopez in the passenger seat. A search of the Grand Am uncovered cellular telephones under both the driver and passenger seats and a pager. Lopez was carrying a nine millimeter pistol, and Hernandez possessed $845.

Through Gray the government introduced into evidence an arrest information sheet that an unidentified officer prepared after Hernandez's arrest. On the arrest sheet Hernandez had stated that his telephone number was (910) 813-6054. Gray further testified as to the contents of phone records that had been subpoenaed from BellSouth Mobility ("BellSouth"). Over Hernandez's objection, Gray testified that the records showed that on September 17th at 4:55 p.m. a call was made from Thacker's cellular phone to (910) 813-6054.

Thacker gave the following account of the drug transaction. He initially met with Alex and Alberto Mendoza to discuss buying a kilogram of cocaine. Thacker testified that Mendoza and "the younger guy right there"--referring to Lopez--came back later to ensure that he had the money. Thacker made Lopez wait in the car while Mendoza counted the money. Mendoza then used Thacker's telephone to make a call and told Thacker he'd be back in twenty-minutes. Thacker, however, had no recollection of checking to see what telephone number Mendoza had just dialed or of relaying this information to Detective Gray. Thacker stated that Mendoza returned with Hernandez, and that he saw Hernandez hand Mendoza a package just before the two men exited the Grand Am and approached Thacker's van. As Thacker inspected the package of cocaine Mendoza handed him, Hernandez commented that it was of good quality.

Appellants' primary contention is that the district court committed reversible error in allowing the government to introduce inadmissible hearsay testimony and documentary evidence linking Hernandez to the phone number dialed from Thacker's cellular phone. Specifically, Appellants cite as hearsay: (1) Gray's testimony that Thacker told him

3

that the telephone number, (910) 813-6054, had been dialed from his cellular phone, (2) the phone records documenting this telephone call, (3) and Hernandez's arrest sheet on which he provided this number as his telephone number. This court reviews a district court's evidentiary rulings for an abuse of discretion, and such rulings are subject to a harmless error analysis. See Fed. R. Crim. P. 52; United States v. Brooks, 111 F.3d 365, 371 (4th Cir. 1997). "`[I]n order to find a district court's error harmless, we need only be able to say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error."'" Id. (quoting United States v. Heater, 63 F.3d 311, 325 (4th Cir. 1995)).

Appellants correctly assert that Detective Gray's testimony with respect to what telephone number Thacker told him Mendoza dialed on his cellular phone was inadmissible hearsay testimony. The statement was an out-of-court statement offered to prove the truth of the matter asserted. See Fed. R. Evid. 801(c). We also agree with Appellants that the phone records introduced at trial were inadmissible hearsay. The Government contends that the records were admissible under the business records exception to the hearsay rule. Rule 803(6), Fed. R. Evid., provides that records kept in the ordinary course of business are admissible as an exception to the hearsay rule. The nature of the records may be established by a "qualified witness," who has sufficient knowledge of the record-keeping system and the creation of the contested record to establish their trustworthiness. Rule 803(6), Fed. R. Evid. Detective Gray did not testify that he was familiar with the creation and maintenance of the BellSouth records, and thus was not a "qualified witness" within the meaning of Rule 803(6). Consequently, the phone records were not admissible under Rule 803(6).**2**

_____

**2** We reject Appellants' contention that the district court abused its discretion in determining that Gray's testimony was insufficient to authenticate the phone records. Rule 901(a), Fed. R. Evid., provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(b)(1) further provides that the testimony of a witness with knowledge that a matter is what it is claimed to be conforms with the requirements of the Rule. Although the district court did not err in finding that Gray's testimony was sufficient to authenticate the records under Rule 901, the mere authentication of a document that is hearsay does not render the document admissible unless it is admissible under an exception to the hearsay rule. See Fed. R. Evid. 802.

4

See generally United States v. Porter, 821 F.2d 968, 977 (4th Cir. 1987).

Appellants' contention that the district court erred in allowing the government to introduce Hernandez's arrest information sheet is without merit. Appellants assert that the arrest sheet was inadmissible hearsay, and that there was no proper authentication of the document. Although the arrest sheet was hearsay, we find that the arrest sheet was admissible under the business records exception to the hearsay rule. See Fed. R. Evid. 803(6). Gray testified that arrest information sheets are records kept in the normal course of police business and that he was familiar with the procedures involved in compiling these documents. Hence, Gray was a qualified witness who properly authenticated the document by recognizing it as an arrest sheet from his police department. Further, any information on the arrest sheet provided by Hernandez was an admission by a party opponent admissible under Fed. R. Evid. 801(d)(2).

Despite the government's presentation of hearsay evidence in support of Appellants' convictions, we find any such error was harmless.[3] Viewed collectively, the challenged hearsay evidence demonstrated only that Mendoza used Thacker's telephone to call Hernandez's telephone number. Even without this link to the drug transaction, the government presented ample evidence implicating Hernandez in the charged conspiracy. Thacker testified that he saw Hernandez hand Mendoza a package before the two men approached his van with the cocaine. He further testified that while he was inspecting the cocaine Hernandez commented on its purity. Finally, corroborating Thacker's testimony is the fact that Hernandez's voice is heard on the tape of the drug transaction. In light of this evidence, we find that Appellants' convictions were not substantially swayed by the admission of hearsay evidence.

_____

[3] In fairness to the district court, we recognize that it is questionable whether Appellants adequately brought the bases for their objections to the attention of the court. See Fed. R. Evid. 103; United States v. Brewer, 1 F.3d 1430, 1434 (4th Cir. 1993). However, because we find that any alleged error was harmless, we decline to determine whether Appellants properly preserved their claims on appeal.

Appellants also claim that the erroneous admission of hearsay evidence violated their confrontation rights under the Sixth Amendment. Under the Sixth Amendment, the accused in a criminal prosecution has the right to be confronted by the witnesses against him. Even if this court accepts Appellants' contention that their right to confront witnesses was violated, any such error was also harmless. See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) (applying the harmless beyond a reasonable doubt standard for constitutional error to Confrontation Clause violations). In determining the degree of prejudice suffered from a Confrontation Clause violation, the focus is on the particular witness and not the outcome of the entire trial. Id. at 680. Here, Appellants had the opportunity to cross-examine Thacker about statements Gray attributed to him. Therefore, the only potential Confrontation Clause violations stemmed from Appellants' inability to cross-examine the preparer and custodian of BellSouth phone records, and the preparer of Hernandez's arrest sheet. Having reviewed the record, this court is assured that the ability to confront these witnesses would have had little, if any, negative impact on the government's case. Therefore, any potential Sixth Amendment violation was harmless beyond a reasonable doubt.

Appellants' final claim is that the district court erred in denying their motions for judgment of acquittal. To sustain a conviction, this court must find that the evidence, when viewed in a light most favorable to the government, was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir. 1993). Circumstantial as well as direct evidence is considered, and the government is given the benefit of all reasonable inferences from the facts proven to those sought to be established. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

The evidence noted above rendering harmless the admission of hearsay evidence also serves to defeat Hernandez's challenge to the sufficiency of the evidence presented in support of his conviction. Lopez's claim that there was insufficient evidence to sustain his conviction is also without merit. Thacker testified that Lopez was with Mendoza when Mendoza came to ensure that Thacker had the money for the deal.**4** In addition, Lopez was present and had a nine millimeter

_____

**4** Although Detective Gray's testimony was to the contrary, conflicting testimony is for the jury to resolve.

6

pistol in his possession when Mendoza and Hernandez delivered the cocaine to Thacker. Viewing this evidence in a light most favorable to the government, a reasonable jury could find beyond a reasonable doubt that Lopez participated in the conspiracy to sell Thacker cocaine and carried a firearm in connection with a drug trafficking offense.

We therefore affirm Appellants' convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7