**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 97-4826

MONA LISA GAFFNEY,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-97-179)

Submitted: March 16, 1999

Decided: August 5, 1999

Before ERVIN, NIEMEYER, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Chris Asher, UNIVERSAL LAW CENTER, Washington, D.C., for
Appellant. Helen F. Fahey, United States Attorney, Justin W. Wil-
liams, Assistant United States Attorney, Alexandria, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

A jury convicted Mona Lisa Gaffney on all counts of a seven-count indictment charging conspiracy to distribute and possess with intent to distribute heroin and hydromorphone, 21 U.S.C.§ 846 (1994), conspiracy to tamper with witnesses, violate the Travel Act, demand and accept bribes, and introduce contraband into a penal institution, 18 U.S.C. § 371 (1994), witness tampering, 18 U.S.C. § 1512(b) (1994), distribution of heroin, 21 U.S.C. § 841(a)(1) (1994), distribution of hydromorphone, 21 U.S.C. § 841(a)(1) (1994), and possession with intent to distribute heroin, 21 U.S.C. § 841(a)(1) (1994) (two counts). Gaffney was subsequently sentenced to 210 months' imprisonment. On appeal, Gaffney challenges various evidentiary rulings made by the district court during trial and the sufficiency of the evidence to sustain her convictions. She further argues that the trial court failed to properly instruct the jury and that her sentence is invalid or excessive. Finding no reversible error, we affirm.

The evidence at trial disclosed that Mona Lisa Gaffney (Mona Lisa) was involved in a drug trafficking organization at Lorton Reformatory, a maximum security facility, in Lorton, Virginia, where her brother, Keith Eugene Gaffney (Keith), was incarcerated. Keith was the kingpin of a drug organization that consisted of a network of inmates and corrupt correctional officers. The Government's evidence included testimony from several correctional officers who admitted that they served as conduits for heroin coming into the maximum security prison and for money from the drug sales going out of the prison through Mona Lisa. The Government also introduced testimony from inmates who, as participants in Keith's drug activities, had contact with Mona Lisa for the purpose of receiving drugs from her during visits.

Robert Tyrone Green, one of the former correctional officers, detailed his arrangement with Keith Gaffney. He testified that Keith would inform him of the arrival of a certain visitor carrying "sandwiches," which were marked by an "X" on the outside. These sandwiches contained hidden balloons of heroin. When the visitor arrived at the checkpoint, Green or another co-conspirator officer would

2

accept the package into the facility and deliver it to Keith. Keith subsequently introduced Green to his sister, Mona Lisa. On this occasion, Green observed her give a package to Keith. Keith and Green agreed that if Mona Lisa was unable to bring the drugs to Lorton, Green would meet Mona Lisa at a local shopping center. Green testified that during these meetings, Mona Lisa handed him packages containing at least four blue balloons containing raw heroin. Upon delivery to Keith, Green observed Keith open the packages and"cut" the heroin. Green further testified that he was also responsible for delivering cash, proceeds from the drug sales, to Mona Lisa.

Another former correctional officer who participated in the conspiracy at the time, Quincy Ford, also testified at trial as to his role in the conspiracy and related dealings with Mona Lisa. He too stated that he met Mona Lisa on several occasions at the shopping center to receive packages of drugs from her to give to Keith or to give her cash from Keith. Both Ford and Green testified that sometimes they traveled together to meet Mona Lisa. Herman Hicks, another former correctional officer and co-conspirator, positively identified Mona Lisa at trial as the woman Green and Ford met with at night at the shopping center.

Tony Patterson, a fellow inmate of Keith's at Lorton, testified that Keith taught him about various aspects of the "business," including how to cut and package the heroin. During one of the visits, Keith introduced Patterson to Mona Lisa, who was subsequently placed on Patterson's visitor list. As a result, Patterson met with Mona Lisa during regular weekly visits, sometimes two or three times a week, over an eight-month period. As a matter of routine, Mona Lisa delivered drugs to him during these meetings and received cash proceeds from the drug sales. Patterson testified that during this period he met with Mona Lisa at least thirty times, and each time Mona Lisa gave him balloons of uncut heroin.

Patterson testified regarding a raid he experienced while incarcerated with Keith at Lorton's medium security facility. Patterson stated that one day prior to the raid, Mona Lisa passed him two balloons of heroin during a visit. This formed the basis for the count charging Mona Lisa with distribution of heroin. Patterson processed some of this heroin, cutting it with hydromorphone (Dilaudid), for distribu-

3

tion, placing it in nineteen individual bags and then in a medicine bag. During the raid, Patterson was caught in possession of the bag. Because the hydromorphone had overpowered the heroin, test results revealed the substance seized was hydromorphone. Mona Lisa was thus charged in another count of aiding and abetting in the distribution of hydromorphone. The day after the raid, during a visit, Patterson passed back to Mona Lisa the remains of two balloons of heroin that had not been seized by officials. Her receipt and possession of the balloons constituted the basis for a charge of possession with intent to distribute heroin. The week after Patterson was returned to maximum security, Mona Lisa visited Patterson and returned the balloons of heroin he had passed back to her after the raid the week before. Mona Lisa's possession of the heroin at this time formed the basis for a second charge of possession with intent to distribute heroin.

In support of the witness tampering charges, the Government introduced the testimony of Patrice Jackson, a/k/a "Peaches," who testified under a formal grant of immunity. She testified that she became acquainted with Keith when, at the age of fifteen, she accompanied his daughter, Keesha Morris, to Lorton to visit him. She testified that she assisted Keith in his operation by smuggling drugs into the facility. She also stated that she set up three-way calls between Keith, Mona Lisa, and other co-conspirators.

After Keith was indicted on federal charges for his extensive drug activities, Jackson informed Mona Lisa that she had been subpoenaed to appear at trial. Mona Lisa asked Jackson whether she intended to go. When Jackson responded that she was going to go to court, Mona Lisa replied, "Bad choice." She further questioned Jackson as to what she told the authorities and whether it could "hurt" Keith. This conversation preceded a subsequent meeting between Jackson and Morris. According to Jackson, at this time, Morris threatened: "Don't go to court . . . you know what happens to snitchers." Jackson maintained that she did not testify at Keith's trial because she was too scared to testify; she felt threatened by both Mona Lisa and Morris. She further indicated that her conversation with Mona Lisa changed her mind about testifying.

At trial, Mona Lisa testified in her own defense. She denied any participation in drug trafficking with Keith, correctional officers, or

4

other inmates. Although she admitted having a conversation with Jackson prior to Keith's trial, she denied threatening her or persuading her in any way not to testify at his trial. The jury convicted Mona Lisa on all seven counts. She was subsequently sentenced to 210 months' imprisonment. This appeal followed.

On appeal, Mona Lisa first challenges various evidentiary rulings made by the trial court during the course of her trial. We review the district court's evidentiary rulings for an abuse of discretion. See United States v. Brooks, 111 F.3d 365, 371 (4th Cir. 1997). Because Mona Lisa raises these objections for the first time on appeal, we review for plain error. See Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 732 (1993).

Mona Lisa initially claims that the court improperly admitted the testimony of co-conspirators Green, Ford, and Hicks whose post arrest statements were hearsay which did not fall under the exception of Fed. R. Evid. 801(d)(2)(E) because at the time of their statements their participation in the conspiracy had ceased. Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Rule 801(d)(2)(E) provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. In this case, co-conspirators Green, Ford, and Hicks testified directly as to their involvement in the drug ring and their first-hand interaction with Mona Lisa in furtherance of that criminal enterprise. Our review of the challenged testimony reveals that it either fell within the co-conspirator exception or was the witnesses' direct accounts of their activities. Accordingly, we reject Mona Lisa's argument that their testimony was inadmissible.

Mona Lisa next claims that the trial court committed prejudicial error by admitting into evidence her co-conspirators' convictions. Specifically, she posits that the court should have excluded, sua sponte, the introduction of Keith's conviction in the Government's opening argument. She further maintains that the Government should not have been permitted to elicit from the former correctional officers that they had entered guilty pleas to the conspiracy charges. We find that the Government was well within its right to elicit from the former

5

officers the fact that they pled guilty, see United States v. Henderson, 717 F.2d 135, 137-38 (4th Cir. 1983), and our review of the record reveals no prejudicial error due to the Government's mentioning of Keith's conviction only during its opening statement.

Mona Lisa next challenges the sufficiency of the evidence to support her convictions. The jury's verdict "must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). Thus, we may reverse a jury verdict only if the record demonstrates a lack of evidence from which a jury could find guilt beyond a reasonable doubt. See United States v. Lowe, 65 F.3d 1137, 1142 (4th Cir. 1995). In resolving issues of substantial evidence, this court does not weigh or review witness credibility. See United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989).

We find ample evidence in the record to support the jury's conviction of Mona Lisa on all charges. To prove a drug conspiracy, the prosecution must show that: (1) an agreement to possess [the drugs] with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy. See United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc), cert. denied, 117 S. Ct. 1087 (U.S. Feb. 24, 1997) (No. 96-6868). Mona Lisa's crucial role in the drug conspiracy led by her brother is detailed throughout the record. We find that there was ample evidence to support the jury's finding that Mona Lisa's participation was knowing and voluntary. Furthermore, the detailed testimony of Patterson and the other co-conspirators further support her conviction for possession of heroin and for aiding and abetting its distribution within Lorton.

With respect to her conviction for witness tampering, i.e., attempting to prevent Patrice Jackson from testifying at Keith's trial, it was incumbent upon the Government to prove that Mona Lisa "knowingly use[d] intimidation or physical force, threaten[ed] or corruptly persuade[d] another person, . . . with intent to (1) influence, delay, or prevent the testimony of any person in an official proceeding." 18 U.S.C. § 1512(b) (1994). Given Jackson's unequivocal statement that she felt threatened by Mona Lisa after their conversation and that she decided at that point not to testify, we find sufficient evidence from

6

which the jury could find Mona Lisa guilty beyond a reasonable doubt.

Last, Mona Lisa avers that the district court erred in sentencing her based on a factual determination that she was responsible for three to ten kilograms of heroin during the conspiracy. Factual determinations at sentencing will not be disturbed unless they are clearly erroneous. See United States v. Self, 132 F.3d 1039, 1041 (4th Cir. 1997), cert. denied, 118 S. Ct. 1573 (U.S. Apr. 27, 1998) (No. 97-8510). In the presentence report, the probation officer calculated that, based on Patterson's testimony alone, Mona Lisa was responsible for 16.3 kilograms of heroin. She derived this amount based on Patterson's account that Mona Lisa usually gave him at least two balloons per visit, visiting him three times a week over an eight-month period. Each visit produced six ounces of cut heroin, and thus, the eight-month period would result in Mona Lisa's delivering 16.3 kilograms of heroin. This figure did not take into account Mona Lisa's dealing with Green and Ford.

Despite the probation officer's finding that Mona Lisa was accountable for over sixteen kilograms and the Government's argument that she was accountable for heroin in excess of ten kilograms, Mona Lisa was sentenced based only on her accountability for three to ten kilograms of heroin. Given the leniency of the sentencing court, and Mona Lisa's inability to show that the probation officer's information was either inaccurate or unreliable, see United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990), we find the sentencing court's determinations to be well-supported and find no reversible error in sentencing.

Accordingly, we affirm Mona Lisa's convictions and sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and oral argument would not aid the decisional process.

AFFIRMED